Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| SOUTHWEST BUILDERS LLC.<br><br>**Recurrente**<br><br>Vs.<br><br>DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR<br><br>SRA. YAJAIRA RODRÍGUEZ VÉLEZ<br><br>**Recurrida** | TA2025RA00095 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.<br><br>MAY-2024-0005290<br><br>SOBRE:<br><br>Resolución de Revisión Administrativa. Bienes raíces (Ley Núm. 10 de 26 de abril de 1994, según enmendada) |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

Hernández Sánchez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de noviembre de 2025.

El 18 de julio de 2025, Southwest Builders LLC. (Southwest o el recurrente) compareció ante nos mediante un *Recurso de Revisión Judicial* y solicitó la revisión de la *Resolución* que se dictó el 13 de mayo de 2025 y se notificó el 14 de mayo de 2025, por el Departamento de Asuntos del Consumidor (el DACo). Mediante el aludido dictamen, el DACo declaró Ha Lugar la *Querella* que presentó la Sra. Yajaira Rodríguez Vélez (señora Rodríguez) el 3 de julio de 2024. En consecuencia, ordenó el cumplimiento específico de los términos y condiciones del contrato de opción de compraventa otorgado el 12 de abril de 2022.

Por lo fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

**I.**

El 3 de julio de 2024, la señora Rodríguez presentó una *Querella* ante el DACo en contra de Southwest al amparo de la Ley Núm. 10 de

26 de abril de 1994, según enmendada, conocida como *Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico*, 20 LPRA sec. 3025 nota, *et seq.* (Ley Núm. 10).[1] Allí, alegó que, el 12 de abril de 2022, mediante contrato de opción de compraventa, opcionó una propiedad ubicada en el Municipio de Lajas por un costo de $120,000.00. No obstante, sostuvo que, transcurrido más de dos (2) años de dicho acuerdo, recibió una carta por parte del recurrente en la cual le indicaba que el precio convenido incrementó a $170,000.00, a consecuencia de los aumentos en costos y financiamientos de construcción. Por lo cual, solicitó que se le honrara el precio pactado en el contrato de opción de compraventa, a saber, $120,000.00.

En respuesta, para el mes de agosto del 2024, el recurrente presentó su *Contestación a Querella*.[2] En esta, aceptó que se firmó un contra de opción de compra. No obstante, puntualizó que la cláusula 10, inciso (d) del aludido contrato disponía que:

> En cualquiera de los siguientes casos, así como cualquier incumplimiento de parte de la Vendedora a los términos de este contrato, el comprador tendrá derecho a resolver el mismo mediante la debida notificación por correo certificado a la Vendedora.
> ......c. Si transcurre más de un (1) año, a partir de la fecha en que otorgó el Contrato de Opción, y aún no se otorgara el Contrato de Compraventa.
> ......d. Si la VENDEDORA le notificará que el precio original de la vivienda ha sido aumentado.

A tales efectos, esbozó que la citada cláusula permitía que el vendedor aumentara el precio de venta y establecía el remedio del comprador ante tales circunstancias. Por lo cual, solicitó que se desestimara la acción de epígrafe.

La vista administrativa se celebró el 12 de marzo de 2025. Posteriormente, el 13 de mayo de 2025, el DACo emitió una *Resolución* que se notificó el 14 de mayo de 2025.[3] En primer lugar, señaló que a la vista administrativa compareció la señora Rodríguez; el Sr. Ramón

---

[1] *Véase*, Entrada Núm. 1 en SUMAC, págs. 3-4.
[2] *Véase*, Entrada Núm. 8 en SUMAC.
[3] *Véase*, Entrada Núm. 2 en SUMAC.

Misla (señor Misla), testigo del recurrente; y la Lcda. Isis Roldán Márquez (Lcda. Roldán), representante legal del recurrente. Luego, evaluada la prueba documental que obraba del expediente y considerando la prueba testifical presentada durante la vista, formuló las siguientes determinaciones de hechos:

1. El proyecto de urbanización Extensión de Estancias del Parra II, donde ubica la residencia objeto de la presente querella, fue un proyecto el cual había sido comenzado a la fecha de su compraventa por parte del querellado, el 2 de marzo de 2022.

2. El querellado, firmó un contrato con Puerto Rico Housing Authority para el financiamiento del proyecto de 45 unidades en Extensión de Estancias del Parra II, por la cantidad de $3,567,000.00 a 7.5% de interés. (Exhibit 2 de la parte querellada)

3. Los desembolsos del dinero del financiamiento se llevaban a cabo a través de certificaciones que entregaba el querellado a Puerto Rico Housing Authority.

4. El día 12 de abril de 2022, la parte querellante y la parte querellada otorgaron un contrato de opción de compraventa de la unidad de vivienda E-16 de tres habitaciones, un baño, sala, cocina, comedor, balcón y marquesina sencilla en el proyecto de viviendas Urbanización. Ext. Estancias del Parra, ubicado en el pueblo de Lajas, Puerto Rico. (Exhibit 1 de la parte querellante)

5. El precio de venta, de la unidad de vivienda, establecido en el contrato de opción de compraventa fue la cantidad de $120,000.00.

6. La parte querellante entregó a la parte querellada un cheque por la cantidad de $100.00 en concepto de depósito del contrato de opción. El restante del dinero del precio de venta, $119,900.00, sería pagado mediante financiamiento a ser tramitado por la parte querellante.

7. La parte querellante había sido precualificada para el precio de venta de $105,000.00, el resto del precio a pagar lo aportaría la querellante de sus ahorros.

8. La Sra. Waleska Rodríguez, encargada de coordinar las ventas de las unidades del proyecto, fue la persona encargada de mostrarle la residencia a la parte querellante, ya que el proyecto antes mencionado había sido comenzado.

9. La cláusula número 5 del contrato estableció lo siguiente:

"La construcción de la propiedad objeto de este contrato se iniciará dentro de aproximadamente un año a partir de la fecha de este contrato."

10. La residencia objeto del contrato ya estaba construida, la misma requería arreglos porque el querellado continuó con el proyecto ya comenzado.

11. La cláusula número 10 (d) del contrato estableció lo siguiente:

"En cualquier de las [*sic*] siguientes casos, así como por cualquier incumplimiento de parte de la VENDEDORA a los términos de este contrato, el COMPRADOR tendrá derecho a resolver el mismo mediante la debida notificación por correo certificado a la VENDEDORA:

d. Si la VENDEDORA le notifica que el precio original de la vivienda ha ido aumentado."

12. La cláusula número 11 del contrato estableció lo siguiente:

"En los casos antes señalados el COMPRADOR tendrá derecho a que se le devuelvan íntegramente sus anticipos y sus intereses, de haberlos, de acuerdo al procedimiento de cuentas de depósito (escrow) establecida en el Reglamento."

13. La parte querellante se comunicaba con la Sra. Waleska Rodríguez para conocer el estatus de la residencia, a lo cual, la Sra. Rodríguez le informaba que la propiedad no estaba lista.

14. El querellado comenzó a confrontar la situación de que habiendo sometido las certificaciones para el desembolso a Puerto Rico Housing Authority, este se atrasó, y la séptima certificación no le fue desembolsado el dinero (no existe evidencia del porqué no desembolsó el dinero de la certificación). Ante tal situación, el querellado decidió buscar otro financiamiento fuera de Puerto Rico para poder continuar con el Proyecto, y cancelar el préstamo original. El querellado no presentó evidencia del nuevo financiamiento otorgado y de sus términos y condiciones.

15. El precio de la pintura y sellador adquirido por el querellado para el proyecto, en comparación con las compras del año 2022, aumentó 3%, 5% y 11%, en el año 2024. (Exhibit 4 del querellado).

16. El precio de una puerta interior en caoba 30 x 96 en el año 2022, a utilizarse en el proyecto fue de $64.95. El marco interior en caoba de 8" tuvo un precio pagado por el querellado de $30.95 para el 2022. (Exhibit 5 del querellado). El documento marcado como Exhibit 5 del querellado, con fecha de 06/05/2023 carece de garantías de confiabilidad, ya que no cuenta con membrete el negocio donde se alega se hizo el pedido o nombre de la procedencia del recibo.

17. El costo de la yarda cúbica de las mezclas de concreto de Macro Mix Concrete para el año 2023 había aumentado un 5%, y dicha mezcla aumento un 3.5% en el año 2024. (Exhibit 7 del querellado).

18. Algunas propiedades, fueron marcadas o pintadas en su interior y exterior, con spray color negro, por personas ajenas al proyecto. (Fotos marcadas como Exhibit 9 del querellado).

19. El 3 de junio de 2024, la parte querellada le notificó a la parte querellante una carta, a través del correo postal y correo electrónico, en la cual se le informó, entre otras cosas, lo siguiente:

"Mediante la presente le informamos que, como consecuencia de los aumentos en costos y financiamiento de construcción, que viabilizan hoy en día el poder completar el proyecto, el precio de venta tentativo de la unidad de referencia será de $170,000.00 (3 cuartos y 1 baño con Marquesina Regular).

En cumplimiento con los reglamentos aplicables del Departamento de Asuntos del Consumidor (DACO), le informamos que, conforme surge del artículo 10 inciso "d", del acuerdo suscrito el pasado 12 de abril de 2022 por usted, tiene la opción de cancelar el mismo según dicta:

"si la VENDEDORA le notifica que el precio original de la vivienda ha sido aumentado".

Sin embargo, de usted interesar continuar con el proceso para la compra de esta unidad a este precio, se requiere la formalización de un nuevo acuerdo. Es importante que previo a suscribir el mismo usted deberá obtener una pre-calificación bancaria para el nuevo precio, o demostrar una prueba de fondos.

La persona a cargo de coordinar (énfasis suplido) las ventas para este proyecto es la Sra. Waleska Rodríguez (Email: info@HOGAR.com). Deberá comunicarse con ella por teléfono y por comunicación escrita (carta o

email) para informar su decisión, ya sea, continuar con el acuerdo o cancelarla.

En caso de continuar con su interés para adquirir esta unidad (la cual estimamos podrá estar completada en un periodo de entre 90 días), se coordinará la firma del nuevo acuerdo. En caso de usted determinar cancelar el acuerdo, se coordinará la devolución del escrow (si fue entregado).

Igualmente...

De no recibir una respuesta de su parte en los próximos 15 días calendarios, entenderemos que interesa cancelar su opción, por lo que estaremos comunicándonos con usted para proceder a la devolución del escrow (si fue entregado)."

20. La parte querellante verificó con el Banco su cualificación bajo el nuevo precio de venta notificado, y le indicaron que no cualificaba para el préstamo bajo el nuevo precio.

21. La propiedad E-9 del Proyecto Estancias del Parra II, que consta de tres cuartos y dos baños fue tasada por el tasado Alejandro Pérez Alfonso, quien valoró la propiedad en $185,000.00. (Exhibit 10 del querellado).

22. El día 3 de julio de 2024, la parte querellante presentó la querella de epígrafe ante este Departamento, solicitando se honre el precio pactado en el contrato.

23. La unidad de vivienda objeto de la presente querella aún no está lista para entrega a la fecha de la vista administrativa.

24. El Exhibit 8 de la parte querellada, no fue considerado como un aumento de precio de materiales, ya que solo se presentó la factura del 28 de septiembre de 2022.

25. El Exhibit 6 de la parte querellada, no fue considerado como un aumento de precio de materiales del proyecto en controversia, ya que el nombre del cliente en el documento de 4/3/2024 y 7/18/2022 es Félix Aza, quien no es la parte querellada, y que se entregaría el material en el pueblo de Juana Díaz no en Lajas, donde ubica el proyecto.

26. Durante la vista administrativa, se tomó conocimiento administrativo de la Ley Núm. 47 de 21 septiembre de 2021, conocida como Ley de Salario Mínimo de Puerto Rico, y de la Ley Núm. 1 de 10 de enero de 2024.

Así pues, conforme a las determinaciones de hechos antes expuestas y el derecho aplicable, resolvió que el contrato de opción de

compraventa del recurrente incumplió con el reglamento de la agencia. Expresó que dicho acuerdo no incluyó entre sus cláusulas que el precio tentativo podría variar por cambios en los planos autorizados, por cambios en los costos del proyecto o su construcción o por aumentos en los costos de construcción certificados por el Ingeniero que los sometió. De igual forma, concluyó que Southwest no demostró durante la vista administrativa que los aumentos en los costos de construcción y proyecto estuvieran certificados por el Ingeniero que sometió el plano.

Por otra parte, determinó que la evidencia presentada por el recurrente respecto al aumento de precio en materiales de construcción fue ínfima. Encontró irrazonable, que, conforme a la evidencia presentada, el precio de venta de la propiedad hubiese aumentado $50,000.00. Por lo cual, declaró Ha Lugar la *Querella* de epígrafe. En consecuencia, ordenó a Southwest el cumplimiento específico de los términos y condiciones del contrato de opción de compraventa otorgado con la señora Rodríguez, al precio de venta pactado de $120,000.00.

En desacuerdo, el 3 junio de 2025, Southwest presentó una *Reconsideración a Resolución.*[4] En esencia, reiteró las alegaciones de la contestación a la querella. A su vez, arguyó que el incremento en el costo de la unidad no se debió a razones arbitrarias, sino respondía al aumento en costos de materiales, mano de obra y financiamiento del proyecto. No obstante, el DACo no atendió la moción dentro el término dispuesto por ley.

A tales efectos, el 18 de julio de 2025, el recurrente presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró DACO al no darle credibilidad al testimonio del Sr. Misla y los documentos presentados en la vista que certifican los aumentos en los costos de construcción del proyecto que justificaba el aumento en el precio de compraventa de $120,000 a $170,000.**
>
> **Erró DACO al requerir que el aumento en los costos de construcción fueran certificados por el Ingeniero que sometió el plano.**
>
> **Erró DACO al concluir que el Querellado no podía variar el precio tentativo de compraventa porque no**

---

[4] *Véase*, Entrada Núm. 3 en SUMAC.

**incluyó en el contrato una cláusula que indicara que el precio de tentativo de compraventa podrá variarse por cambios en los planos autorizados por las agencias con jurisdicción, por cambios en los costos del proyecto y/o su construcción o por aumentos en los costos de construcción que deberá ser certificado por el Ingeniero que somete el plano.**

Atendido el recurso, se ordenó a las partes a presentar una copia de la transcripción de prueba oral estipulada. El recurrente cumplió con dicha orden y la transcripción fue acogida. Posteriormente, el DACo presentó su oposición al recurso. Sin embargo, la señora Rodríguez no presentó su postura dentro del término concedido para ello. Por lo tanto, con el beneficio de la comparecencia del DACo damos por perfeccionado el recurso y procedemos a resolver el asunto ante nos. *Veamos.*

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía*, supra, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025

TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd.  Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

Las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos lícitos, las acciones u omisiones en la cual medie culpa o negligencia y cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil de 2020, 31 LPRA sec.8984. En lo pertinente al asunto ante nos, los contratos son un negocio jurídico bilateral en el cual dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratos son negocios jurídicos desde que las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9772. Mediante un contrato las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.

Ahora bien, en lo pertinente a la controversia ante nos, los contratos de opción, aunque no están reglamentados en nuestro Código Civil, sí han sido reconocido jurisprudencialmente y nuestro más alto foro lo ha definido como sigue: "el convenio por el cual una parte (prominente) le concede a otra parte (optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002). En otras palabras, este contrato es un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compraventa. Ahora bien, los elementos esenciales de este contrato son: (1) se le concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (compraventa) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción; y, por último, (4) no existe otra condición que no sea la voluntad del optante. *SLG Irizarry v. SLG García*, 155 DPR 713, 722 (2001).

**-C-**

La Ley Núm. 130 de 13 de junio de 1967, según enmendada, conocida como *Ley de la Oficina del Oficial de Construcción adscrita al Departamento de Asuntos del Consumidor*, 17 LPRA sec. 501, *et seq.* (Ley Núm. 130), creó la Oficina del Oficial de Construcción con el propósito de reglamentar y fiscalizar el negocio de la construcción y venta de viviendas privadas en Puerto Rico.[5] Este estatuto, además, confiere jurisdicción al DACo para para adjudicar controversias relacionadas con la construcción de viviendas en Puerto Rico, lo que incluye, entre otras, las querellas por prácticas indeseables de constructores o urbanizadores.[6]

A tenor con dicho marco normativo, la Ley Núm. 130, *supra*, junto con el Reglamento Núm. 2268, aprobado el 16 de septiembre de

---

[5] Art. 3 de la Ley Núm. 130, 17 LPRA sec. 503.
[6] Art. 11 de la Ley Núm. 130, 17 LPRA sec. 511.

1977, conocido como el *Reglamento para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico* (Reglamento Núm. 2268), y su enmienda mediante el Reglamento Núm. 8070 de 8 de septiembre de 2011, establecen el marco regulatorio aplicable al desarrollo y la venta de viviendas en urbanizaciones y proyectos de nueva construcción. Particularmente, estos estatutos disponen los requisitos que deben incorporarse en los contratos de opción de compraventa y en los contratos uniformes de compraventa. Asimismo, establecen los parámetros que rigen las causas y consecuencias de la resolución de dichos contratos, delineando los derechos y obligaciones de las partes.

En lo pertinente a la controversia ante nos, la Sección 11 del Reglamento Núm. 2268, enmendada por el Reglamento Núm. 8070, dispone lo siguiente:

> SECCION 11 - Requisitos que contendrán los Contratos de Opción
>
> [...]
>
> 7. El precio de venta tentativo y pronto o depósito pactado para firmar el contrato de opción, que no será mayor de un 4% del precio de venta tentativo allí pactado. **El precio de venta tentativo podrá variarse por cambios en los planos autorizados por las agencias con jurisdicción; por cambios en los costos del proyecto y/o su construcción o por aumentos en los costos de construcción que deberá ser certificado por el Ingeniero que somete el plano.** Del aumento ocurrir el urbanizador y/o constructor notificará al COMPRADOR el referido aumento y éste último podrá aceptarlo o podrá resolver el contrato, en cuyo caso el urbanizador y/o constructor devolverá al comprador su depósito íntegro de acuerdo al procedimiento establecido en la Sección 19 de este Reglamento. (Énfasis suplido)
>
> [...]
>
> 15. El derecho del COMPRADOR de exigir el cumplimiento especifico de su contrato de opción o a resolverlo si la VENDEDORA no cumple con sus obligaciones bajo el contrato.
>
> [...]

Por su parte, la Sección 12 del del Reglamento Núm. 2268, también enmendada por el Reglamento Núm. 8070, en lo pertinente, establece lo siguiente:

SECCIÓN 12: Cumplimiento específico o causas de Resolución del Contrato de Opción por parte del Comprador

EI COMPRADOR tendrá derecho de exigir el cumplimiento específico del contrato de opción o a resolverlo con la debida notificación por correo certificado o personalmente al urbanizador y/o constructor, por no haber éste cumplido con sus obligaciones bajo el mismo y deberá cumplir con los requisitos de la Sección 17 de este Reglamento en cuyo caso tendrá derecho a que se le devuelva íntegramente las cantidades de dinero anticipadas por él a la parte vendedora. El Comprador también podrá resolver el contrato de opción en cualesquiera de los siguientes casos:

[...]

4. Si el urbanizador y/o constructor le notifica que el precio original de la vivienda ha sido aumentado.

[...].

**III.**

Mediante el recurso que nos ocupa, el recurrente nos solicitó la revisión de la *Resolución* que emitió el DACo el 13 de mayo de 2025. Particularmente, en su primer señalamiento error, argumentó que, el DACo erró al no otorgarle credibilidad al testimonio del señor Misla y los documentos presentados en la vista que certificaban los aumentos en los costos de construcción y que justificaban el incremento en el precio de compraventa de $120,000.00 a $170,000.00. En síntesis, planteó que de la propia *Resolución* impugnada surgía evidencia documental y testifical que acreditaba aumentos en los costos de materiales de construcción, incluyendo pintura, sellador, puertas, marcos y concreto.

Además, indicó que múltiples fuentes económicas, como la Junta de Planificación, la Junta de Estadísticas y la Asociación de Constructores, reflejaban un aumento real de al menos un 30% en los costos de construcción en Puerto Rico, impulsado por factores como los huracanes Irma y María, la pandemia del COVID-19 y la inflación.

Asimismo, cuestionó que el DACo hubiese negado el aumento en costos de mano de obra, pese a que la escasez de trabajadores en el sector de la construcción era un hecho notorio que había incrementado los costos y los tiempos de desarrollo de proyectos. Indicó que, aun

cuando el DACo reconoció la vigencia de la Ley de Salario Mínimo de 2021, concluyó que los aumentos eran previsibles, sin considerar que la falta de empleados disponibles no lo era. Finalmente, señaló que el DACo excluyó sin justificación evidencia documental relacionada al financiamiento del proyecto, a pesar de que el testimonio del señor Misla acreditaba un aumento de alrededor de $1,200,000 en el costo del préstamo.

En cuanto el segundo señalamiento de error alegó que el DACo erró al requerirle que el aumento en los costos de construcción fueran certificados por el Ingeniero que sometió el plano. Sostuvo que la intención del Reglamento era que los aumentos fueran reales y no arbitrarios. Ante ello, aseveró que presentó documentos, así como el testimonio del señor Misla para acreditar el alza en los costos de construcción.

Sobre el tercer señalamiento de error, manifestó que el DACo incidió al determinar que no se podía variar el precio tentativo de la compraventa porque no se incluyó en el contrato una cláusula al respecto. No obstante, señaló que en la cláusula 10(d) del contrato de opción a compra se establecía que el comprador tenía derecho a resolver el mismo si la Vendedora le notificaba que el precio original de la vivienda había sido aumentado. A tales efectos, sostuvo que dicho contrato contenía una advertencia de que el precio tentativo de compraventa podía aumentar y que las partes estaban debidamente apercibidas de este hecho.

En atención a lo anterior, procedemos a atender los señalamientos de error formulados. En cuanto al primer planteamiento, el expediente administrativo demuestra que durante la vista administrativa se presentaron documentos y testimonio dirigidos a establecer aumentos en materiales tales como pintura, sellador, puertas, marcos y concreto. Sin embargo, el DACo determinó no darles valor probatorio por entender que carecían de confiabilidad y respaldo suficiente. Asimismo, se consignó que, aunque el señor Misla testificó

sobre aumentos en financiamiento y costos de mano de obra, no presentó documentación que corroborara tales extremos, como cotizaciones, contratos o certificaciones del financiamiento nuevo. En consecuencia, el DACo concluyó que la evidencia presentada era insuficiente para demostrar que los costos del proyecto habían aumentado en la magnitud alegada.

No surge del expediente que dicha apreciación de la prueba haya sido producto de pasión, prejuicio o parcialidad, sino del ejercicio legítimo de la facultad adjudicativa de evaluar credibilidad y peso de la evidencia. Como es sabido, le corresponde al foro administrativo determinar la credibilidad de los testigos y el valor que ha de darse a la prueba presentada. Los tribunales revisores no debemos sustituir nuestro criterio por el del organismo administrativo, salvo que medie error manifiesto, abuso de discreción o ausencia de base racional. En este caso, el DACo explicó las razones por las cuales no dio peso a determinados documentos ni al testimonio ofrecido, y esas razones se encuentran debidamente consignadas en la *Resolución* impugnada. Por ende, el primer señalamiento de error no se cometió.

El segundo señalamiento de error del recurrente se relaciona con la interpretación de la Sección 11, inciso (7) del Reglamento Núm. 2268, *supra*, enmendado por el Reglamento Núm. 8070, *supra*. Según el recurrente, el DACo erró al requerir una certificación del ingeniero que sometió los planos para justificar los aumentos en costos de construcción, toda vez que, a su juicio, la norma reglamentaria no exigía una formalidad tan estricta, sino tan solo prueba de que los aumentos eran reales. No obstante, el texto del Reglamento Núm. 2268, *supra*, es inequívoco al disponer que los aumentos en el precio tentativo de venta "deberán ser certificados por el ingeniero que somete el plano". La exigencia de dicha certificación no constituye un tecnicismo vacío, sino una salvaguarda esencial de la política pública de protección al consumidor que rige los contratos de opción de compraventa. Su propósito es asegurar que los incrementos en el precio respondan a

factores objetivos, verificables y certificados por un profesional con responsabilidad técnica sobre el proyecto.

En el caso de autos, el recurrente no presentó certificación alguna del ingeniero que sometió los planos, ni evidencia equivalente que acreditara formalmente la procedencia y razonabilidad de los aumentos alegados. Aun cuando se presentaron recibos y estimados de costos, éstos no cumplían con los requisitos mínimos de autenticidad ni se vincularon a la obra objeto del contrato. Por consiguiente, el DACo actuó conforme a derecho al concluir que no se demostró un aumento real y debidamente certificado en los costos de construcción que justificara el incremento del precio de venta. Así pues, el segundo señalamiento de error no se cometió.

En cuanto al tercer señalamiento de error, la parte recurrente sostiene que el DACo erró al concluir que no podía variarse el precio tentativo de venta, toda vez que la cláusula 10(d) del contrato de opción contenía una disposición que reconocía la posibilidad de aumentos en el precio y otorgaba al comprador la opción de resolver el contrato en tal caso. Sin embargo, de la lectura del contrato surge que dicho inciso no equivale a la cláusula reglamentaria requerida por la Sección 11, inciso (7) del Reglamento Núm. 2268, *supra*, enmendado por el Reglamento Núm. 8070, *supra*, la cual exige que se establezca de manera expresa y detallada que el precio de venta tentativo podrá variar por aumentos en los costos de construcción certificados por el ingeniero que somete el plano. La cláusula incluida en el contrato, en cambio, solo preveía el derecho del comprador a desistir si el vendedor notificaba un aumento, sin reconocer el fundamento reglamentario ni los requisitos técnicos para justificarlo. Por lo tanto, el tercer señalamiento de error no se cometió.

A la luz de lo anterior, concluimos que el DACo aplicó correctamente el derecho vigente y actuó dentro de su discreción al determinar que la parte recurrente incumplió con las disposiciones reglamentarias aplicables. El expediente demuestra que el contrato de

opción otorgado no contenía la cláusula exigida, y que la parte recurrente tampoco cumplió con la certificación del ingeniero requerida para justificar los aumentos en los costos de construcción. En cuanto a los alegados incrementos en los costos de materiales, mano de obra y financiamiento, el DACo evaluó la prueba y concluyó razonablemente que la evidencia presentada no sustentaba la magnitud del aumento reclamado. Este Tribunal no encontró error manifiesto ni desviación de los principios de razonabilidad en la determinación recurrida.

Por consiguiente, confirmamos la *Resolución* emitida por el DACo el 13 de mayo de 2025, al concluir que la parte recurrente incumplió con los requisitos reglamentarios para variar el precio tentativo de venta y, por tanto, está obligada al cumplimiento específico del contrato de opción de compraventa por el precio original de $120,000.00.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones